Next case is In re the Marriage of Sturm, 4-10-0114. For the appellant is Thomas L. Brucker. You are he, sir? Yes, sir. For the appellee is Robert S. White. You are he, sir? Yes, sir. Mr. Brucker, is that pronounced correctly, Brucker? Brucker, yes. Thank you, sir. You may proceed. May it please the court, this matters before you as a result of a judgment coming out of the circuit court of Ford County. It involved a dissolution of marriage between my client, petitioner Laurie Michelle Sturm and Jeffrey James Sturm. Wherein the judge in the judgment, in our belief, was abusive discretion in not awarding my client permanent maintenance. My client was coming off a 31-year marriage. They had two children. She worked for Thrivant Lutheran. Both her and the husband made approximately $100,000 per year. You mean each? Each. And about three years prior to the petition being filed, my client started suffering depressive mood swings. She was seeing a psychologist at that point in time. And that was in March of 2008. In July of 2008, she received another setback when her 25-year-old son died, who she was very close to. And as a result of those combinations of those various things, the psychologist drew various conclusions that she went from just depressing mood swings to very chronic mood swings. Her organization skills became nil. Her motivation was nil. Basically, her outlook on life was very tainted, going in the wrong direction. Was the son who died their only child, Derek? No, there's another child. What did he die of? Judge, I... I don't think the record was clear. And it was not said on the record. Well then, okay, never mind. He's just dead. He was just dead. How old was he when he died? Twenty-five. Go ahead. And her mood swings became more and more, I would term as being more aggressive in the sense that she filed a petition for dissolution of marriage and was very depressed about even separating from her husband as well. So we had the previous mood swings back in March of 2008. We had the son dying in July of 2008, and then the disagreements with the husband and the ultimate dissolution of marriage. As a result of that, her $100,000 lifestyle and earnings potential gradually decreased. And I put in my brief, her economic woes were on a spiral downward. And coupled with her mood swings, this economic woe, she went from $100,000 to, at the time of the petition, I think she was making around $20,000 or $24,000. She had received emails from her employer, who she had worked with for 25 years, to say, look, there's a $30,000 threshold that you have to sell this business every year. You're not meeting that threshold. There's a warning letter. And once she got this warning letter, it all went even further south, if I may say so. And at that point in time, she got on disability. And they put her on disability. So at the time of the dissolution, she was on... What was the diagnosis? I'm sorry? What was the diagnosis for her disability? I think it was chronic depression. And so she was to receive, at the time of the divorce, beginning in January of 2010, she was to receive approximately $1,200 a month on disability. Now, they're both, I cited cases that the Fourth District is well aware of, and many of this panel wrote their opinions on. I think this is a classic case of pigeon-holed into those various cases. From Kerber, start out with Hart to Kerber, where we're having a long-term marriage. We're having a client, my client was over 50 years of age, 50, exactly 50 I think, and whereby something happened. In one case we had where an auto accident occurred, but not in this case. But she, as a result of her depressive moods and a result of the son dying and the breakup of the marriage and everything else, the psychologist basically said it's questionable whether or not she will ever gain back that organizational quality. She sold life insurance annuities for Thrive and Lutherans. The psychologist said it's questionable if she will ever get back those qualities and organizational skills that she has needed in order to perform. And that was at the time we did the dissolution of marriage, the trial court had all that in front of it. The evidence clearly showed this was not just circumstance that was happening because of divorce. The evidence showed that it had started several years prior to this. And the evidence showed that it started with her depressive moods and everything else, was aggravated by the son. Then the evidence showed that decrease in her salary potential, her earning capacity, even became greater. The employer that she had been with for 25 years recognized this as well. And the husband was making, as I said, $100,000 as well. He got fired or let go from his job because of some misconduct on his part. He picked up another job with Pekin Insurance. And all the indications are that it was the same type of selling annuities, etc. That he had a good potential there to get back up to his $100,000 salary. Plus he had received, when his father passed away, an inheritance of $150,000. And so he had the capacity, without going bankrupt, the capacity to share some of that to my client by way of permanent maintenance. My client moved out of the marital home, and this kind of tells you what her state of mind was. My client moved out of the marital home, went to an apartment that didn't even have hot water. And it was kind of like an office almost building. And she was there for about a month, and then she got into a regular apartment. But that's how her mindset was getting out of this marriage, her depressive moods, and everything else. So we believe that there's a real abuse of discretion by the trial court in not awarding permanent maintenance. We asked the trial court for 25% of his salary that he would have been making had he not committed that misconduct. And in addition, we believe he's probably going to make that $100,000 again with Beacon. He has that potential. So we were asking for 25% or about $25,000 for maintenance on that aspect of it. And we believe it was abuse of discretion for the court not to award it. The second thing that happened was the court, there was a life insurance policy on the deceased son. The deceased son had, there's evidence to show that both mom and dad paid the premiums on that life insurance policy as the son was growing up. However, at some point in time, a couple years before the petition, the son switched, and mom and dad was a named beneficiary on that life insurance policy. About two years prior to this petition, the son switched the named beneficiary over to my client only, only to mom, not to mom and dad both. Or was he 23 at the time? He was about 23 at the time. So our argument, the judge said, okay, in lieu of maintenance, we're going to give you the remaining portion of this life insurance policy. Our position is that life insurance policy should come to her unencumbered. It belonged to her. She was a named beneficiary. What was the argument that it was marital property? The judge, we did not, I did not believe it was marital property in the sense that I think it comes under the first exception of either gift or inheritance or whatever. The opposing counsel argued, of course, that it was come under marital property, and the judge just said, the statute says marital property, therefore it's marital property. Were premiums still being paid at the time of death? I think it was all paid up, I believe. But prior to that time, the parties here had both paid the premiums for the child? Yeah, when he was younger growing up, and I don't know when that ended. I'm not sure the record was clear on that, as to when that ended. We did not believe it's marital property. Counsel in his aptly brief talked about that it is marital property, and it doesn't come under any exceptions. But then I noticed in his last paragraph of his brief, he talked about if you do find it to be a gift, which I believe it is, then there still may be some transmutation of property, where she put it in an account. My client put in all this money that she got from life insurance policy in an account in her own name. Nobody else's name, husband's name wasn't on there, just her name was on there. Now she paid some bills, she paid some expenses for the daughter going to college, she paid some other stuff, but the second argument they had was transmutation of property, which I think would be a real stretch to go that route. We believe there's an abuse of discretion. I think if you pigeonhole the facts of this case into the Hart case, the Kerber case, and talk about the standard of living which they enjoyed, and now my client, because of the situation where she's basically lost her job, is on a downward spiral to do that, and she needs to get that standard of living back. Okay, thank you counsel. Thank you. Mr. White. If Derrick had named you as the beneficiary of the life insurance policy, would it be marital property? No. No, he could have named you or me. He chose to name his parents. So he named his mother. Well, yeah. Initially it was the parents when they bought it, I'm sure. Counsel, you asked a question, or Justice Steigman asked a question about the premiums. The premiums were paid by the parents not only through the time of his minority, but also the time of his majority. Does that matter? No, not necessarily. I mean, it was a gift to him to do with what he chose to do. Yes, yes. So your client isn't claiming because he paid the premiums. He somehow has some claim on the life insurance process. No, no, not at all. Okay. It doesn't matter to me how we do this in terms of the order. I mean, our case is the Smith case, which is cited and which we provided for Judge Casey. The Smith case is a case in which there was insurance for a man who was a pilot for United Airlines. The insurance was bought by his union, apparently. When he died, there was an argument about whether it was marital or non-marital. This is a third district case. The circuit court found that it was non-marital. The third district reversed and remanded on the basis that the statute 503, 750 ILCS 5503, and the exceptions, there is no exception in that case. Yeah, but in that case, Mr. Smith was a party to the marriage, right? Yes, that's right. Mr. Smith was a party to the marriage. And in this case, the son is not a party to the marriage. That's right, too. Of course, neither was the airline pilot's union that bought the policy. So what I'm saying is, if there's a third party entity that produces the contract, after the contract is complete, in this case by the death of the son, in the Smith case by the fact that the pilot had a heart attack and no longer had his license to fly, which was what was insured, then the payment is made. And as the statute points out, or as the Smith case points out, too, this is a case in which the proceeds from that particular policy came when the parties were still married. It doesn't matter whether it was... But this was money paid to the husband because of a situation that... It's like money here, wasn't it? Isn't this like, if I'm employed in a certain way, and I can't continue my job, and I'm insured for it, and I get insurance, isn't that like a form of compensation for my employment? I think you could argue that. I'm an NBA player, and I insure my knee, and it's blown out, and I collect $3 million. That would be rental property, wouldn't it? Yes. How does that case have anything to do with what we have here? If I'm following your question, I think what the Smith court said, the third district said, is, and they were talking there about disability insurance being marital property, and they lumped the proceeds from this insurance policy with that in the same way. They said it's something that they acquired, in this case Mrs. Sturm acquired, during the marriage. And the court said that in its analysis, there are other states that have dealt with this in other ways, but we don't have that flexibility because of 503 and the exceptions that are listed in 503, and we don't see one there which satisfies us that this is an exception, therefore it's marital property. And Judge Pacey, I think, took the same view, that there was no exception. In other words, the Illinois court, the third district court is saying, someplace else they can do that, but not us. So any insurance proceeds payable to someone is marital property, even if it's from brother-in-law or sister or parent or whatever, having nothing to do with the marriage? Unless there's some other reason not to, I think, yes. Why isn't that a legacy or a gift or both? Well, my argument is it's a contract. It's what? It's a contract. What contract? It's the result of the insurance contract. I don't follow you. Contract between whom? Well... Who are the contracting parties? In this case, the insurance company and originally the parents. The parents then turned the policy over to the son. I thought we established that this was a gift from the parents to Derrick when they bought this insurance policy for him. Isn't that correct? Yes. Okay. And it was then Derrick's asset, as he pleased. Yes. And he chose to provide that the only beneficiary would be his mother. Yes. Well, I guess this goes back to Justice McCullough's question. If there's a contract here, is he in reach of the contract for inheriting the money from Derrick? You mean is the mother in breach? Him! Oh, no. His first question. Why not? No. What happened to the contract? The contract is satisfied when it's paid to the beneficiary, right? That's what happened here. Contract was done. The beneficiary was paid. Mother was paid. Mother was in the marriage. That's money that was received during the course of the marriage. It doesn't matter whether it's to mother, to mother and father together. That's what the third district said. What does a contract have to do with anything? I don't understand. Maybe I'm muddying the waters. Well, let me ask you a question. If mom and dad bought a car for their son and their son untimely deceased but left a will and he left the car to his mother rather than his mother and father, does that make it a marital asset? I don't think so. How is the policy of insurance any different than a car? Well, Your Honor, all I can say is as I read the statute and as I read the Smith case, the third district thought it was, and I agree with their reasoning. Had he provided that the beneficiary of this life insurance policy shall be his estate, and if his estate had said, I leave everything to mom, would it be marital property? Based on my last answer to that question, I don't think so. So I guess it stands then that any proceeds of an insurance policy in which she's the beneficiary, your position is as long as she's married, when those proceeds are paid, that's marital property, period? Unless it falls under one of the 503 exceptions. Well, by definition, it doesn't is your position. Yes. Well, okay. What about the maintenance, 31-year marriage? When was the last time you saw a 30-year marriage that maintenance wasn't granted? I haven't seen one, but I haven't also seen one with this fact pattern, where you have two people who are each making $100,000 a year up to this certain point. Well, once upon a time, are you disputing the evidence that was presented to Judge Pacey that this woman is now in a rather different position than she was several years ago? No. Judge Pacey did not hear anything but the testimony of the wife. And the only other thing that Judge Pacey saw was the exhibit, which was Petitioner's Exhibit No. 11. I think it's on page 102 and 103 of the record, which is from a psychological social worker or something, which said essentially what counsel has just said, which Judge Pacey admitted and treated as hearsay and pointed that out in his order. And my impression from what happened is that Judge Pacey didn't give that much weight. So she's a malingerer? No. He didn't think, my understanding of what... Was that your argument? No, it is not. Did you argue that any of her recent condition isn't believable? My impression from what is in Judge Pacey's order... My question first was, what did you argue? I argued that with that No. 1, the letter was hearsay and it shouldn't be admitted. Did you argue that she was a malingerer? No. Did you argue that her condition as she described it wasn't believable? Well, no, we didn't argue that. Did you present any contrary evidence? We had no evidence to the contrary other than that she had been working and she had been producing up to 2009 when she fell short by about $10,000 in terms of the requirements from ThriveIn. And ThriveIn put her on disability pay, right? Exactly. It wasn't a... So there really wasn't any issue even if the clinical social worker or whatever he or she was, that report was hearsay. It was of record within, you know, and it validly admitted that her employer put her on disability, right? That's correct. So whether it was disability due to two broken feet or a mental condition, it doesn't matter. She can't work anymore. She's on disability, right? She's on disability temporarily. There's no... Again, there's no testimony other than the letter as to whether this is permanent, whether she has no longer any ability to make a living. Did you object to the letter? Yes, I did. On the grounds that it was hearsay? Yes. On which letter? The letter from the treater. But not the disability letter? No. You didn't object to that? And did you inquire or deduce any evidence of your own as to the length of time this woman is going to be on disability? She doesn't know. The people at Thriven who produced the letter don't appear to know. My response to the argument in the original petitioner's brief is nobody knows. She's 50 years old. She has had the ability to make a living for 25 years. So based on that time and experience, there's lots of reason to be optimistic that this is a condition that is transitory and she'll be back on her feet soon? Well, she seems to have been able to work through it over a period of time, as counsel was arguing beforehand. Well, how about then maintenance during her bad times and when she's better, assuming that she's able to get better, reconsider it then? That certainly would be an option. But it wasn't the option, I guess you argued, or that Judge Pacey adopted? It was not the option that Judge Pacey adopted. I think Judge Pacey took the position that the amount that she received of marital property, treating the proceeds from the insurance as marital property, as well as somewhere between $30,000 and $40,000 out of that. Of course, if we disagree with the idea that any of that insurance payment were marital property, then this would have to go back for a redo over the whole question of maintenance, wouldn't it? It would certainly change that. Insofar as my abuse of discretion, the abuse of discretion argument, as I thought about this, I was thinking about a law school professor who was talking about willful and wanton conduct and said, one of the ways you see that is when the judge reads it, he says, oh my God, smacks himself on the forehead and rears back in his chair and says, nobody, no reasonable man would do that. I don't think that's this case. The cases that have been cited in the appellant's brief are cases that we all know and they stand for propositions that we don't take issue with, but they don't fit the facts of this case. I don't know what Mr. Brucker is talking about when he says, if you pigeonhole this case into these cases. Justice Steigman, your words in the first case that he cites about you were outraged that the trial court could do such a thing and this is just not that case. This is not a case where she gave up anything in the marriage over 30 years so that he could do anything. As a matter of fact, she was at this longer than he was. I don't know, I don't remember what he did before he started selling for thriving, but that's not the case. The Kerber case, you've got a case of a woman who stayed home, went to work late in life, had no skills. That's not the case here. He cites Drury where Judge Garman says that maintenance cases come in all shapes and sizes of all kinds of fact patterns and I certainly agree with that because our fact pattern doesn't fit any of these cases. Sisal is a case that deals with termination of maintenance. The Harlow case is, again, another fact situation that's different. There was no, I don't know again what counsel meant when he said in his brief that the petitioner was already on disability. This was resolved before that. Judge Casey's position, I believe, is that the manifest weight of the evidence, he didn't give much weight to the letter from the treater and apparently he didn't give much weight to the testimony by the wife, the petitioner. But as I say, the argument here is present and future earning capacity of each party was shown to be grossly disproportionate. That isn't the case. We don't know that. If she recovers, it seems to me she has the ability to make money just like he does. The argument that he has money to pay that won't cause him any difficulty is there's in the documents two things. In the record are his no compete clause that he has with Thrivent which keep him from selling anything during the time he works for, for the first couple of years he works for Pekin, anything that Thrivent sells that's similar. So he can work for Pekin, but he can't sell anything. If his old clients come to him, he can't talk to them and so on. Second thing is an indication in the record that during the period, basically July to November of 2009 after he was terminated by Thrivent, which by the way was certainly not something that he wanted to happen after working 20 years for them and raising himself up to the level that he was making what he was, is that he made $12,000 in about a five-month period. That certainly doesn't necessarily mean that he's going to be able to make $100,000 every year working for Pekin. The court may not agree, this court may not agree with Judge Pacey insofar as the abuse of discretion and against the manifest way to the evidence argument, but I don't think this is the case that meets the oh-my-God test and we think it should be affirmed. Thank you. Thank you, counsel. Mr. Brecker, any rebuttal, sir? Okay. Thank you. Of course, we do think that there was an abuse of discretion and as we said before, we do believe that this falls directly into the pattern of cases that have developed in the Fourth District Appellate Court over the years. What strikes me, which is even more important, is the fact that she was on disability. She was. She had all this background information as far as depressive mood and everything else going straight on down and so when I said it's a spiral going south, that's exactly what it was. And I think it falls into that egregious disregard and egregious abuse of discretion by the trial court in not accepting these. As far as the hearsay argument, all these exhibits were admitted to evidence and the judge in his order said hearsay first but in the contents or something, it's not enough to sway me otherwise or something like that. But he said that. So I don't think you can go with the hearsay argument. It is what it is. My client has suffered. We're asking this court to take a good look at it. We believe we're correct in the insurance policy. I don't know where remotely it could not come in under that exception of a gift or legacy or whatever. So I think there's abuse of discretion on the trial court's part and I think there's a real abuse of discretion when you look at all the collective parts of this, and I'm sure in the other cases you had homemakers and stuff like that. You didn't have that, but you also had 50-year-old women. You had people with poor health. I think in Curbera it was poor health. So a lot of my fact patterns fit right into those. So we'd ask that you follow what the 4th District has been developing over the years and that is where trial courts have got to take a good look at this maintenance issue and not just totally disregard it. Okay, thank you, counsel.